UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-cr-20248-MARTINEZ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

PRENTISS MADDEN,

    Defendant.
_____/

## SENTENCING MEMORANDUM

Defendant, PRENTISS MADDEN, hereby requests this Court vary downward from his advisory guideline range and, in support of this request, states the following:

Under the sentencing scheme set forth in § 3553 the calculation of the guideline range is not the end point for sentencing; rather it is just the starting point for fashioning an appropriate sentence. *United States v. Talley*, 786 F.3d 784, 786 (11th Cir. 2005). Once this calculation is made, the Court must also consider the following:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3)    the need for deterrence;

(4)    the need to protect the public;

(5)    the need to provide the defendant with needed educational or vocational training or medical care;

(6)    the kinds of sentences available;

(7)    the Sentencing Guidelines range;

(8) pertinent policy statements of the Sentencing Commission;

(9) the need to avoid unwanted sentencing disparities; and

(10) the need to provide restitution to victims.

While § 3553 sets forth a wide range of factors that must be evaluated, this Court may give greater weight to some factors than others. *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009).

**A. The guideline calculation**

In most cases, "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007). One of these objectives is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. § 3553(a). This does not mean that every guideline will "exemplify the Commission's exercise of its characteristic institutional role." *Kimbrough v. United States*, 552 U.S. 85, 109 (2007). When a correct calculation repeatedly results in a sentence at or near the statutory maximum, the guideline range "does not warrant deference because it will result in a punishment that is greater than necessary to achieve the appropriate sentencing goals." *United States v. Riley*, 655 F. Supp. 2d 1298, 1305 (S.D. Fla. 2009) (Imposing a below-guideline sentence where an offender's guideline calculation "will chart at or above the statutory maximum" even in an ordinary case); *Kimbrough v. United States*, 552 U.S. 85 (Holding that a sentencing judge has the discretion to disagree with a particular provision of the guidelines and to impose a non-guidelines sentence that is more consistent with the statutory sentencing factors set out in section 3553(a)).

This is exactly the result when Madden's guideline is calculated under § 2G2.2. Section 2G2.2's specific enhancements, like a 2 level increase for using a computer, were originally intended to apply only to the most egregious offenders. However, with changes in technology, these specific enhancements now apply to most offenders, including Madden. And, these enhancements, which are cumulative, quickly increase the guideline range dramatically. As Judge King noted in *Riley*, "the average defendant charts at the statutory maximum, regardless of Acceptance of Responsibility and Criminal History." *United States v. Riley*, 655 F. Supp. 2d at 1302 (quoting *United States v. Hanson,* 561 F.Supp.2d 1004, 1010–11 (E.D.Wis.2008)).

Assuming this Court follows the PSI's recommendations, Madden's advisory guideline range is 210 to 262 months. This range encompasses the statutory maximum and is 4 times the statutory minimum. Thus, the guideline range creates a starting point that is harsher than necessary to achieve the objectives of § 3553. *United States v. McBride*, 511 F.3d 1293, 1298 (11th Cir. 2007) (Affirming downward variance from advisory guideline of 151 to 188 months to 84 months in child pornography case). As such, it should not be the driving force behind a determination of what is a reasonable sentence in this case. *United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006) (Discussing the weight to be given to the guideline calculation and noting that while "the Guidelines are an accumulation of knowledge and experience and were promulgated over time by the Sentencing Commission," there are "many instances where the Guidelines range will not yield a reasonable sentence").

**B. The history of Prentiss Madden**

Madden is a 40-year old man with no criminal history. As reported in the PSI, from a very young age Madden witnessed his mother being physically and verbally abused by his step-father. Dr. Ponton's evaluation (which will be provided to this Court) reveals that this was ongoing physical violence that included severe beatings, choking, and on one occasion the step-father stabbed Madden's mother because she tried to leave. Madden often tried to put himself between the two to stop the violence because he believed his step-father was going to kill his mother. The step-father was an alcoholic and Madden's mother abused alcohol and drugs.

This, however, is not the only trauma Madden experienced as a child. Madden was also victimized by a friend of the family at age 5. At age 12, an older boy who had spent years bullying Madden at school, sexually molested him. Madden's first sexual encounter were the result of pressure and involved 3 boys and a girl who were a few years older than him. He discovered, however, that he was attracted to one of the boys triggering intense feelings of guilt. Madden has carried the scars of this abuse well into adulthood. However, the only "treatment" Madden received was at a point in time that he was in couples' therapy with the intended focus of mending his relationship issues. He never shared his sexual interest in dogs with anyone he has spoken to. And, much of this treatment pre-dated the development of his interest in child pornography.

Notably, following his arrest, Madden recognized he needed to be in treatment for this conduct. Madden's mother has been paying for Dr. Samek to meet with him monthly at the FDC. Madden has asked for additional treatment. The fact Madden confronted his conduct before being ordered by a court to do so shows he is an individual who takes

responsibility for his actions. In addition, Dr. Samek's reports (which will be provided to this Court) show Madden's risk of recidivism to be very low. These characteristics are of the utmost importance because they weigh in favor of a lower sentence. *Gall v. United States*, 552 U.S. 38, 59 (2007) (Noting "[t]he District Court quite reasonably attached great weight to Gall's self-motivated rehabilitation, which was undertaken not at the direction of, or under supervision by, any court, but on his own initiative"); *United States v. Clay*, 483 F.3d 739, 746 (11th Cir. 2007) (Affirming downward variance based on post-offense, pre-indictment, rehabilitation as it reflects that the the defendant "poses a lesser risk to the community, and does not require incapacitation for too long").

### C. Seriousness of offense/respect for the law/just punishment and deterrence

The most serious of crimes for which Madden faces sentencing carry a statutory minimum term of five years and a maximum sentences of 20 years imprisonment. He faces, according to Probation, an advisory guideline sentence of 210 to 262 months in prison. If this Court grants Madden's objections to Probation's recommendation, the advisory guideline range will decrease to 78 to 97 months. But, prison is not the only punishment Madden has suffered or will suffer.

Madden's guilty plea left him a convicted felon *and* sex offender. This, in turn, requires Madden to register his status with local, state and federal officials indefinitely. He will forever be restricted from living in certain places, frequenting certain areas in the community or taking certain jobs - - including as a veterinarian if this Court's follows Probation's recommendation. Thus, Madden now is consigned to an uncertain future of limited possibilities and income. He will suffer the consequences of his actions well beyond

the end of a prison term.

Madden acknowledges the seriousness of this offense. His decision to start treatment and the finding by the psychiatrist that Madden presents a low risk to society, insures he will not repeat the conduct. The fact that he will spend a number of years in prison and then be subjected to life-long restrictions is a real deterrent to Madden and anyone else who is considering committing the same crimes. In light of the foregoing, a variance below the advisory guideline range is warranted.

Respectfully submitted,

*/s/ Michael Mirer*
**MICHAEL MIRER, ESQ.**
100 N. Biscayne Blvd.
Suite 1300
Miami, Florida 33130
Telephone:   (305) 536-6177
Facsimile:   (305) 536-6179
E-mail:       michael@mirerlaw.com
Florida Bar No. 119490

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically this 4th day of October, 2021.

*/s/ Michael Mirer*
**MICHAEL MIRER, ESQ.**